Thank you. Good afternoon and may it please the court. Alexandria Hines, certified law student, on behalf of Petitioner Felicia Acqua Awuzda, a Ghanaian citizen. Again, I will be reserving three minutes for rebuttal. I will first briefly discuss the change in law applicable to withholding of removal and the BIA's errors regarding Ms. Awuzda's past persecution theory of her asylum claim, followed by a discussion of the BIA's multiple orders with regard to her well-founded future fear theory of her asylum claim. First, with withholding of removal. Following the BIA's 2017 order, the legal standard for withholding of removal changed in Barajas-Romero, requiring an applicant to show a protected ground is simply a reason for the persecution sustained. The government's stance is found on page 30 of their answering brief, is that Ms. Awuzda is not entitled to this change in law because the BIA failed in both the 2016 order and the 2017 order to distinguish whether or not her protected ground was a central reason or a reason for the persecution. But this argument fails because Ms. Awuzda is entitled to have her claim examined by the BIA and examined under the appropriate law. So, which protected ground are you relying on for the withholding claim? Because I understand there were three different grounds. There was women in Ghana who cannot leave their marriages, women in Ghana who cheat on their spouses, and then individuals who are in the LGBTQ community. And I think before we get into the merits arguments that you're having, there's a pretty important procedural argument that we need to address. I recognize that that came at page 54 of your brief, but I think that that's the important issue that we need to address first. And that relates to the scope of the remand and whether there was error on the part of the agency, because the agency, as I understand the record, did not consider the third ground, being an LGBTQ individual in Ghana, and instead addressed the first two grounds. And the vast majority of your brief focuses on evidence that the agency did not address the procedural issue. Could you turn your argument to that, please? Yes, Your Honor. I'll take your question in turn first. The protected ground is her particular social group here as a lesbian. Ms. Awuzda has delineated her social group as a lesbian woman and part of the LGBTQ community multiple times. Throughout the record, we can see that she delineates herself as a lesbian woman to the immigration officer, the asylum officer, and further to the immigration judge. She states that she identifies with LGBTQ acts, even though she has difficulty communicating the fact that she is a lesbian. She identified herself with the LGBTQ acts as women who cheat on their husbands with another woman. So the petitioner believes that she has clearly stated her particular social group. And then the procedural issue that you have brought up, there are multiple components involved. First, the remand was improper between the first and the second BIA order. In particular, because the BIA is required to not only state in particular what grounds it is being remanded on, but it also must explicitly retain jurisdiction, which it failed to do. And therefore, it was not a specific remand, it was a general remand. And all of the country conditions offered at that point by Ms. Awuzda, who now had counsel and had the ability to offer the country conditions, when before she was pro se and detained, she could only provide her credible testimony. You're referring to Ninth Circuit case law and decisions from the BIA that delineate the scope of a remand order. And I think you're correct that the case law says that a remand is limited and the IJ does not have jurisdiction to consider certain things if the BIA specifically limits the order and retains jurisdiction. And there's no indication here as you're arguing that the BIA retained jurisdiction, although it did clearly identify a limited scope, it didn't do both. So the question that raises for me is, does that mean that the IJ was required to consider things beyond the scope? Having authority to do so, having it within your jurisdiction is not the same as being required to do so. I did not see anything in the case law that addressed that point, which I think is a significant distinction, because the opposite would suggest that there's no finality to litigation and the IJ is required writ large to reconsider every litigated issue on any remand. So how do you respond to that? I mean, if the IJ was allowed to do it, but not required, how is that error? Your Honor, because this was for multiple reasons, this was error because Ms. Awudza was unable to provide the country conditions at an earlier point. So this would have been her first opportunity with counsel to provide the adequate country conditions. And further, because... Why was she prevented from presenting the country conditions at the first hearing? Your Honor, she was proceeding pro se and detained, so she didn't have access to the documentation that she needed to prove the vast and widespread persecution in Ghana. But you're not arguing newly discovered evidence or reports that surfaced after the fact. This is all information that existed. You're arguing hardship, because for circumstances that we conclude, she was precluded from presenting this information. Is that correct? She was precluded because they would not accept, while they accepted her credible testimony, her condition, she does offer a changed condition. She offers the fact that she can prove... But you're sort of, to use a word that pops up in your brief a few times, eluding the two hearings. So at her initial hearing, you're saying she didn't present the country conditions because she was detained and she was pro se. And you're saying later, she couldn't do so. But later she had counsel. So I don't think you can argue she couldn't do it then. In fact, she tried to do so then and submitted additional documents to the IJ. But your argument was that she couldn't do it. She was precluded from doing so on her first hearing. Well, Your Honor, in the first BIA order found on AR 575 to 578, the BIA did discuss the fact that she did fall into the LGBTQ group. So during the remand, it really should have been discussed the country conditions that she was offering to prove that fact. Okay. So you're saying the IJ should have done it. Is there any authority that the IJ was required to re-litigate issues that had already been decided? I mean, he had jurisdiction to do it, but was he required to do so? Your Honor, additionally, Ms. Awudza had filed a pro se motion to reopen that was ignored by the IJ. Okay. Well, this is significant factually. She filed something that said motion to reopen on the caption, but the entire contents was a notice of appeal, including checking the box and the standard form to appeal. She was also represented by counsel off and on throughout this period and had overlapping counsel, multiple counsel at various points. And in fact, that document was withdrawn by one of her counsel. So how did the BIA or the IJ abuse its discretion and not considering a withdrawn notice of appeal? Why should they consider that a motion to reopen? Your Honor, at the time that she filed that, she was pro se. And while it was a very complicated procedural matter, she did not have counsel in that moment. And she did attempt to reopen her matter to have the country conditions entered. And you're arguing, and your argument is well taken, that when people are pro se, the court construe their filings liberally. But what I'm suggesting to you and questioning you on is, on the record in this case, that she's not entitled to that liberality standard because she had counsel. And in fact, one of her counsel, and there were many, withdrew, filed another notice of appeal and withdrew his client's filing that she's now trying to argue is a motion to reopen. So how does that mean the agency abused its discretion by not considering a document that it had been told by counsel was withdrawn? Your Honor, the court still has an independent obligation to assist the pro se applicant as much as possible. Your assumption is that she should be treated as a pro se. So maybe you could tell us why you keep saying that she's pro se when there seems to be some evidence in the record that she had counsel. And in fact, it seems as if the record is quite confused. Can you provide some clarity during your argument on this topic? Your Honor, it's very, the record is very discombobulated in that the limited remand was inappropriate due to not expressly retaining jurisdiction. And then the multiple remands, some were pro se and some were with counsel. So it is very confusing. But in the moment in which Ms. Owudza offered the document, the motion to reopen, she was pro se, which is why I'm calling her a pro se applicant in that moment. And I want to be cognizant of the time and I would like to address her well-founded future fear, theory of asylum. So Ms. Owudza has proven both the subjective and the objective prong of the well-founded future fear test. Her credible testimony, which is not at issue and has been accepted by the IJ and the BIA on AR 654 and 658, it's not an issue and it satisfies the subjective prong. The BIA rejected her well-founded future fear claim based on the objective conditions. And the component requires that an applicant show persecution is a reasonable probability by at least a 10% chance of future persecution as a member, either as an individual and with individual circumstances or as a member of a disfavored group. And first to analyze her as an individual. Ms. Owudza's credible testimony that she was warned by her mother, that her husband had searched for her and had labeled her as a lesbian to multiple communities, not just his neighborhood, but the mother's neighborhood, shows that she was unable to remain and it would be very difficult for her to return safely, possibly impossible for her to return safely. AR 183 to 184, 727 and 829. This also highlights the fact that relocation would be difficult and Ms. Owudza is entitled to the presumption that internal relocation is not reasonable based on the fact that Ghana has criminalized LGBTQ acts. And the government has emphasized in their brief a danger theory of Ghanaian law in which the male pronoun written law would not apply to Ms. Owudza as a lesbian, which is absurd because in fact it is applied. And further on AR 542, Ghana's information minister has stated, it is very clear, the laws of Ghana are very clear in that they appall and criminalize the LGBTQ community. And further, a retired justice of the Ghanaian Supreme Court has stated that acts of, he uses a more derogatory term, but homo, LGBTQ community are an abomination, which is exactly the language used by Ms. Owudza's husband when he outed her. He called for his neighbors, come see, witness, and attack abomination, woman and woman together. And clearly the BIA's failure to find a pattern and practice of persecution with the offered country conditions, it clearly passes the 10% threshold. The record is just vast on this. If there are no remaining questions, I would reserve the rest for rebuttal. Thank you. All right. Thank you, Ms. Hunts. All right. I'll try it again. I apologize if I'm saying it incorrectly because everyone says it incorrectly, so I know how annoying that can be. Is it, is it Jarawan? Jarawan, that's correct, Your Honor. Okay, please go ahead. Thank you. Good afternoon, Your Honor. Please, the court, Rea Jarawan, half of the reports of the Attorney General of the United States. First, I'd just like to respond briefly to counsel's arguments that Your Honor touched on. With regard to what particular social group we're focusing on, the petitioner's opening brief only discussed the sexual orientation of particular social groups. It waives the particular social groups that are mentioned in the 2017 court decision, which are the married women who cheat on their husbands with another woman, and married women who are unable to have their relationship. Those two particular social groups are not an issue here because they were waived in the opening brief. So, we are only focused on the initial discussion. With regard to the scope of the remand, the immigration judge was not acquired. It certainly did have the authority, and it concerns the board's discussion of remand, and determined on page 13 of the record, more than narrow in focus, you, the scope of remand, based on the specific instructions that the board permitted, which were to discuss ARCG, the matter of ARCG, a particular social group, discuss cat protection and the relationship to that. And it was clear in the specific details of the immigration judge. But the immigration judge, you know, could also allow submission of additional documents, but ultimately, the scope of remand was not. But he's assuming that the issue should have been a document. However, the agency's finding did not demonstrate a wealth of fear of future persecution. Either showed individualized, single-double persecution, or the pattern in practice of persecution in Ghana. And the agency in the 2016 made it very clear. Mr. Arbonne, let's assume that the lack of review was harmless. As you know, I sought my regular area of expertise for a district judge, but hasn't there been significant number of decisions with respect to Ghana on this topic? And can we really assume that the failure to consider all the evidence provided with respect to conditions would not, in fact, result in different outcomes? How can we really assume that? Well, I think it's less than part of the consideration documents, which the brief 28 and 29 goes into detail as documents. They are mainly identifying hateful rhetoric. So, Mr. Arbonne, the difficulty I'm having with your argument is that you're asking us to consider characterizing evidence the agency did not consider. And so, how can we do that in the same thing by voting the vast majority of their brief to evidence that the agency hasn't considered yet? It seems inappropriate for us as an appellate court in the first instance to take a swipe at what this evidence means. I mean, how do we get to your harmlessness argument? How is that appropriate? Well, your Honor, I guess the petitioner can't also have it both ways. So, if we're going to look at just the tween decision, the most important there and the agency, both the immigration judge and the board, made it quite clear that the sexual orientation claim was fully exhausted and considered based on the fact that Ghana, according to multiple items in the record, does not prohibit same-sex lesbian couples. In fact, the Ghanaian president in 2014 on page 564 spoke that consensual sex between men is punishable and there's no specific law prohibiting lesbian homosexuality, according to the country report, which is exhibit four, as well as page 572 and 230. That alone distinguishes this case from Brumfield versus Mukasey, which is the Jamaica decision that the board discussed in its 2016 decision. So, if we're just going to look at one set of documents that the board did consider, the outcome is in favor of the government. If the petitioner is asking us to re-look at new documents, which were submitted as exhibit R1, into the new agency decisions and is asking the court to consider those documents, those documents, again, don't change the outcome. The documents identify hateful rhetoric, but they identify only two or three instances of violence over an eight-year period. Again, that doesn't identify a pattern and practice of persecution. Certainly, if your honors feel that the board must look at these decisions or the immigration judge must look at these decisions, we can go back for a third go-around, but the multiple bites at the apple in this case are extending the case indefinitely when the agency has spoken quite clearly as to what the outcome should be based on a wide iteration, a numerous iteration of all these particular social groups that the petitioner has presented, and the agency has patiently, in turn, identified, considered, and rejected all of those particular social groups and all of those documents. So, I'm simply arguing that if we consider those documents, it is harmless error that the board limited the scope and then the immigration judge agreed with the board. So, let me raise the same issue with you that I raised with your opposing counsel, which is with respect to the procedural issue on the remand. And the appellant has cited a case law to show that for a limited remand that would remove a topic or an issue from the IJ's jurisdiction, a couple of things are required, the BIA retaining jurisdiction and then issuing the limited remand. And that didn't happen here. They didn't retain jurisdiction, at least not that I've been able to find. And as I raised with opposing counsel, I see a distinction between having the authority, meaning having jurisdiction, and being required to review an issue. But if we look at these orders and conclude that the agency, either the IJ or the BIA, mistakenly believed that the IJ did not have jurisdiction to consider various additional issues on remand, is that error? And if it is error, what do we do about it? If your honor is asking, did the immigration judge err by agreeing with the board's limited scope of remand? No, I'm asking a slightly different issue. I've read the IJ's order. I don't think he says, I don't have jurisdiction. He says, here's what I was told to do. I'm not going to relitigate these other issues. Okay. And then I think you can interpret the BIA's order. It's a little ambiguous, but you can interpret them as saying the IJ didn't err. This is what we told them to do. But what if we were to look at those documents again or the other judges were to look at them and have a different view or convince me of a different view and say, no, these orders indicate that the agency thought the IJ did not have jurisdiction, when that would be erroneous. What do we do about that? So if the question is that the IJ erroneously thought they did not have jurisdiction, what should we do? If in considering these documents, the court sees some factual dispute, that a factual finding needs to be made, then certainly the agency would have to make that finding in the first instance. But I'm asking, Your Honor, that even assuming that there was some error in what the immigration judge considered or thought that its authority was permitted to do, I still would submit that that error was harmless based on this new evidence that is being presented. And that evidence, if you take it in total, does not present a systemic and pervasive pattern and practice of persecution in Ghana towards lesbian women specifically. But if Your Honors disagree with that. I mean, what authority allows us to decide that to apply a harmless error standard in this context? Certainly, the court has in the past determined that remand would be futile if the outcome would be the same, if the agency's ultimate decision would still be that this particular petitioner did not meet her burden of establishing asylum or withholding. So I don't have a specific case law. I don't believe we provided specific case law in our brief. But that's certainly a principle that this court has authority to consider that remand would be futile and that the outcome would be the same. And based on the evidence in question here, Your Honors, the substantial evidence does support the agency's decision. Ms. Owusu did not present past persecution evidence sufficient to meet her burden. She was not physically harmed before her husband has abandoned the marriage. She has claimed that she would be able to divorce him upon returning to Ghana, and that there would be no issue with her being able to leave the marriage and not being forced to remain in the marriage. And so with respect to asylum and withholding, she has not met her burden. Even looking at the individualized facts of this case, to the convention against, she's not met her burden. Can I ask you a slightly different, or not slightly, but a different question? We certainly agree that the CAT analysis is flawed because the order did not discuss the sexual orientation. Well, the CAT analysis, I believe, in the first agency decision, the immigration judge in 2016 did discuss that, discussed how there was no evidence of past torture, discussed that there was insufficient evidence that Ms. Owusu could not relocate to Ghana. There was gross flagrant or mass violations of human rights in Ghana. And the board in 2016 didn't get to that issue, which it's allowed to do simply because it remanded the decision. Ms. Owusu had asked on appeal to discuss other issues. She did not focus on the CAT issue. She focused on the fact that she wanted her claim to be considered based on matter of HRCG and to be considered a domestic violence victim. So the board at that point remanded. So I don't see the error exactly in the discussion of the CAT protection claim when it was believed in the 2017 decision. It was also considered, and the same agency decision was made, that there was no evidence of past torture. There was no evidence of mental pain, which was a brand new claim Ms. Owusu brought up, and that she had not met the more likely than not standard to show that she would be more likely than not tortured by her husband in Ghana or by the neighbors. Again, to show that, she must show that there's a greater than 50% chance that her would incite the neighbors to do so as well, and that evidence is simply not there according to the agency, and that was the proper decision in that case. Going back just briefly with the limited time I have, unless there's another question, to the past persecution claim. Again, Ms. Owusu was not harmed during her escape from her husband and the neighbors. She was not physically harmed, and she was able to remain in Ghana unharmed until she was able to leave the country. And again, there was no testimony that she was unable to relocate to another part of Ghana or that her family required her to remain in the marriage or that anyone was pressuring her to come back to the marriage. So again, I would present the government's arguments in its brief that are supported by the substantial evidence in this case and I would simply note that Ms. Owusu has just not met her burden in this particular case. Five years after this incident in question and five years after the documentary evidence that she submitted, the record simply does not compel reversal of the agency's finding that she failed to meet her burden. So accordingly, I ask this court to deny the petition for review. Thank you. Judge Bea or Gonzales-Rodgers, do either of you have any additional questions? No, thank you. Okay. All right. Thank you, Ms. Jarwan. And Ms. Hines, you have two minutes on rebuttal. Hello. Briefly on rebuttal, while withholding of removal will have to be remanded to analyze her claim under the appropriate law, we ask that this court examine all of her claims to allow the BIA to properly correct its errors regarding also her asylum claim and the CAT claims. Further, Judge Gonzales-Rodgers is correct that when asking counsel if the country conditions would really change anything, she's correct that it would. First, because pattern and practice is based in law on a showing of country conditions to establish a well-funded future fear of persecution. And second, the country conditions show AR 363 and 505, the Amnesty International report from 2013 showing rampant LGBTQ violence and persecution in Ghana, it's not just limited to men. And further, the 2010 Human Rights Report, the United States Human Further, counsel misstated the law with regard to the scope because the BIA did not retain jurisdiction and further misstated the law with regard to past persecution because physical harm is not the standard following Kovach versus INS in 1969, a case from this court. And further, the BIA did in fact examine the emotional harm with regard to past persecution in its order. It just stated, which was misstated by counsel, it was just stated to not be sufficient. Can I ask you a question? On remand, it was the first time that Wuzda presented the country conditions on which she relies, right? Is the only reason that you proposed for allowing that evidence to be considered that she was in pro se, the first of her theory? And further, because the BIA asked... That's one reason. That's one of the reasons. The other reason is that the BIA asked Mr. Wuzda to supplement the record with facts and conditions to show the domestic violence, they limited her to domestic violence when she wanted to show the conditions for her LGBTQ status. Thank you. All right, so we're going up. The clock is going up now, so that means we're over time. Unless Judge Bey or Judge Gonzalez-Rogers have any more questions, I'll just give you a moment to wrap up and then we'll end. Okay. All right. So we will take this case under submission. Counsel, thank you both for your arguments. They were very helpful. And congratulations, Ms. Hines, on your appearance in the Ninth Circuit. And you should feel very proud of yourself for putting yourself well and representing your client effectively. So thank you this afternoon and we'll adjourn. Thank you, Your Honors. Thank you. This court for this session stands adjourned.
judges: Bea, Bade, Y. Rogers